GRANVILLE GOLD TRUST–SWITZER-LAND, Granville Gold Switzerland Corporation, and Abdul Hafeez Muhammad, Plaintiffs,

v.

COMMISSIONE DEL FALLIMENTO/INTERCHANGE BANK, Ufficio Di Esecuzione E Fallimenti/Inter Change Bank, Defendants.

Civil Action No. CV–95–0619.

United States District Court, E.D. New York.

June 7, 1996.

Steven H. Gifis, Pennington, NJ, Richard R. Rio, Goldman & Rio, New York City, for Plaintiffs.

Paul Bschorr, Dewey Ballantine, New York City, for Defendants.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

Plaintiffs have moved for an amendment of the judgment and for leave to amend their complaint deleting reference to the Commissione Del Fallimento/Interchange Bank and the Ufficio Di Esecuzione E Fallementi/Interchange Bank while adding each individual commissioner who worked on the liquidation of Inter Change Bank and the Canton of Ticino as defendants. Defendants oppose the motion and again request Rule 11 sanctions against the plaintiff.

### Background

In January 1996, defendants brought this action against plaintiffs requesting this court to vacate a $125,444,300,221 default judgment entered in state court and dismissing the case for lack of subject matter jurisdiction and other grounds. In February 1996, this court vacated the default judgment. *See* Order, dated 3/28/96. In April 1996, this court granted defendant's motion to dismiss and denied plaintiff's motion to amend the complaint finding that subject matter jurisdiction against plaintiffs, both named and proposed in the amended complaint, was lacking pursuant to the Foreign Sovereign Immunity Act (FSIA). *See* Memorandum and Order, dated 4/16/96. The focus of the plaintiffs' complaint was that they had allegedly deposited $600,000 into a trust account in 1966 which would have grown to $125,444,300,221. However, when the bank went bankrupt and liquidated its assets, the plaintiffs did not receive anything. Thus, "plaintiffs allege that the Commission[e] misplaced, stole, or otherwise misappropriated the trust assets." Pltff. Mem. at 3. In the proposed amended complaint, plaintiffs added the six individual commissioners who served on the Commissione during the course of ICB's liquidation as well as the Canton of Ticino. *See* Proposed Amended Complaint. According to plaintiffs, "by stealing the trust assets, [these individuals] exceeded the scope of their authority as members of the Commission[e]." Pltff. Mem. at 3.

Plaintiffs now maintain that with the deletion of the two entities, the immunity which barred the action no longer applies. Consequently, plaintiffs request the court to amend the judgment pursuant to Fed.R.Civ.P. 59(e).

### Discussion

#### (1)

 In their proposed amended complaint, plaintiffs sue not only the individual commissioners, but also the Canton of Ticino. Interestingly, the Canton is sued on the theory that as an "employer" of the commissioners, it is liable for the commissioners alleged wrongdoing. However, normally for an em-

ployer to be liable for the acts of its employees out of which the alleged liability arises, the acts must be done in furtherance of the employment. Under this theory, in order to find the Canton of Ticino liable, plaintiffs must accept that the individual defendants acted within the scope of their authority.

■ In any event, the Canton would certainly be immune from suit in United States' courts pursuant to the FSIA. As discussed in the prior Memorandum and Order, the FSIA provides the sole basis for subject matter jurisdiction in the United States courts against a foreign sovereign or its agent or instrumentality. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439, 109 S.Ct. 683, 690–91, 102 L.Ed.2d 818 (1989). As no specified exemption applies to the Canton of Ticino, it could not be sued in United States courts.

### (2)

■ The FSIA applies to individuals acting in their official capacity even if specific acts taken in that capacity are alleged to be negligent or intentional. *See Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095 (9th Cir.1990); *Kline v. Kaneko*, 685 F.Supp. 386, 389 (S.D.N.Y.1988). Plaintiffs have not stated with particularity any facts which support their contention that the proposed individual defendants failed to produce the trust's property when it was allegedly demanded and conspired not to do so. Moreover, plaintiffs cite two cases, *Hilao v. Estate of Marcos*, 25 F.3d 1467, 1470 (9th Cir.1994); *Xuncax v. Gramajo*, 886 F.Supp. 162, 174 (D.Mass. 1995), to support their position that individuals engaging in activities within the scope of their authority are not entitled to the FSIA immunity. These cases, however, involve persons who although they may be acting within the scope of their authority, are al-

leged to have committed acts of torture and murder which are violations of international norms. In these situations, courts have not only found exceptions to the FSIA, but also base jurisdiction on the Alien Tort Act, 28 U.S.C. § 1350,[1] and the Torture Victim Protection Act of 1991, Pub.L. 102–256, 106 Stat. 78, *see* S.Rep. No. 249, 102d Cong., 1st Sess., reprinted in 1992 U.S.C.C.A.N. 84, 86.[2] Thus, the Alien Tort Act creates a cause of action for violations of specific, universal and obligatory international human rights standards which "confer fundamental rights upon all people vis-a-vis their own governments." *Estate of Ferdinand Marcos*, 25 F.3d at 1475, citing *Filartiga v. Pena–Irala*, 630 F.2d 876, 885–87 (2d Cir.1980). These cases have no applicability to the issues involved here. The FSIA denies jurisdiction to this court for any acts the individual commissioners undertook to meet their official duty to liquidate the bank.

■ Assuming, however, that the individual commissioners committed the acts alleged and, in so doing, were acting beyond the scope of their authority, there still is no reason to amend the judgment and permit the action to go forward against the individual defendants as in personam jurisdiction is lacking over these individuals. None of the actions which these individuals are alleged to have taken, whether it be the misappropriation of funds or the conspiracy, occurred in the United States. All of these acts would have occurred in Switzerland.

■ Thus, plaintiffs have not alleged, nor can they allege "minimum contacts" between the United States, not to mention the Eastern District of New York, and the individual commissioners. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Plaintiffs' earlier brief im-

---

1. This act provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Furthermore, in *Estate of Ferdinand E. Marcos Human Rights Litigation*, 978 F.2d 493, 500, the court found jurisdiction under § 1350, stating: "[T]he prohibition against official torture carries with it the force of a *jus cogens norm*, which enjoys the highest status within international law.... We therefore conclude that the district court did not err in founding jurisdiction on a violation of the *jus cogens norm* prohibiting official torture."

2. The statute provides in relevant part: "An individual who, under actual or apparent authority, or color of law, of any foreign nation ... subjects an individual to torture shall, in a civil action, be liable for damages to that individual." TVPA, § 2(a)(1).

plies that because they are domiciled in the United States and "felt" an economic loss in the United States, personal jurisdiction can be established. However, the inquiry into personal jurisdiction, as distinguished from subject matter jurisdiction, must focus on defendants' contacts with the forum and not plaintiffs' contacts. *Ginter v. Swedish Match AB*, 1990 WL 203110 at *5 (E.D.N.Y. Nov. 21, 1990) ("The injury must occur within the state; it is not enough that the economic loss accrued to a resident of the state.").

At the February 28, 1996 hearing, plaintiffs contended that in personam jurisdiction in the United States existed because ICB made a trust agreement in New York, the beneficiaries were American, and ICB owned land in Florida. The flaw in this argument is that it ignores the fact that under Swiss law, the Commissione, the Canton, the Ufficio, or the individual commissioners are not successors in interest to the bank, nor do any of these entities or individuals assume any of the liabilities of ICB. Hirsch Aff. ¶¶ 20, 21, 29. Thus, whatever contacts there may have been between the bank and the plaintiffs in the United States cannot be imputed to the Commissione's members or any entity previously mentioned herein. They are responsible only for their own acts all of which took place in Switzerland.

No connection between the Commissione members and the United States has been shown. Although physically entering the forum is not necessary, no activities in connection with the alleged misappropriation were conducted in the United States either. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover, none of the individual members has been engaging in continuous and systematic transactions with the United States, and no such transaction has been alleged by the plaintiffs. Because proposed defendants have not availed themselves of the privileges of the United States, in personam jurisdiction would be inappropriate. *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo S.A.*, 792 F.2d 989 (11th Cir.1986); *Maryland Tuna Corp. v. Nichimen Co., Inc.*, 429 F.2d 307 (2d Cir.1970).

Plaintiffs, in their reply papers, request that they be allowed to conduct discovery to determine whether in personam jurisdiction exists. However, before imposing such an expensive burden on these defendants, plaintiffs are required to make a prima facie showing of in personam jurisdiction in their complaint. *See New York Marine Managers, Inc. v. Topor-1*, 1989 WL 4030, *1 (S.D.N.Y. January 17, 1989). *See also Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir.1990). Plaintiffs have not met this burden as they have not claimed any relationship between the proposed individual defendants and the Eastern District of New York.

### (3)

Defendants again request Rule 11 sanctions be awarded as they found this motion to "utter[ly] lack merit." Def. Mem. at 1. Since in personam jurisdiction was not addressed in the previous opinion, sanctions will not be awarded.

### Conclusion

Any amendment to the judgment to permit the amending of the complaint would be futile. The Canton of Ticino is immune from suit pursuant to the FSIA. The individual commissioners either acted within their official capacities, and thus are immune from suit pursuant to the FSIA as well. Alternatively, if they acted beyond their official capacities, although there may be subject matter jurisdiction, in personam jurisdiction is lacking because no contacts with the United States by these individuals have been alleged or can be found. Consequently, the plaintiff's motion to alter the judgment pursuant to Fed.R.Civ.P. 59(e) is denied.

SO ORDERED.