J. Alan Barron v. Gary Vanier and Mark Goldowitz, Individually and d/b/a The California Anit-Slapp Project

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-045-CV

J. ALAN BARRON APPELLANT

V.

GARY VANIER AND MARK GOLDOWITZ, APPELLEES

INDIVIDUALLY AND D/B/A THE 

CALIFORNIA ANTI-SLAPP PROJECT 

------------

FROM THE 415TH
 DISTRICT COURT OF PARKER COUNTY

------------

OPINION
 
ON REHEARING

------------

On March 2, 2006, this Court issued an opinion reversing the trial court’s orders and remanding the case to permit additional discovery and for further proceedings.  Appellee, Mark Goldowitz, individually and doing business as the California Anti-SLAPP Project (Goldowitz), filed a motion for rehearing.  After due consideration, we deny Goldowitz’s motion for rehearing, but we withdraw our opinion and judgment dated March 2, 2006, and issue this opinion and judgment in their stead.  The disposition, however, remains unchanged.

I.  Facts and Procedural History

J. Alan Barron, a Texas resident, is the chief operations officer of First Cash Financial Services (FCFS), a public company listed on the NASDAQ national market system.  FCFS is a Delaware corporation with its principal place of business, including its administrative and executive offices, in Arlington, Texas. Blake Miraglia and Gary Vanier, California residents, owned shares of stock in Miraglia, Inc., a California corporation.  Vanier and Miraglia were two of only seven shareholders.  Barron alleged, and Vanier did not contest, that Miraglia and Vanier “owned and controlled a majority interest” in Miraglia, Inc.  Miraglia, Inc. had at least eleven Texas customers.  Miraglia, Vanier, and the other shareholders sold Miraglia, Inc. to FCFS on June 4, 1998, pursuant to an Asset and Stock Purchase Agreement (the Agreement), and in exchange received $21 million in cash, notes, and common stock.  Following the transaction, Miraglia and Vanier’s combined holdings in FCFS totaled almost 8% of FCFS’s issued and outstanding shares.  In addition, Miraglia agreed that Miraglia, Inc.’s principal offices would be moved to Arlington, Texas.

The Agreement contained an anti-dilution provision.  Miraglia, who had become an officer of FCFS as part of the Agreement, believed that he was entitled to an increasing number of warrants and stock options based on this provision and the distribution of warrants and options to other FCFS officers and directors.  There is no evidence that Vanier was entitled to warrants under the Agreement.  When FCFS denied him additional warrants, Miraglia quit his job and filed suit against FCFS.  Vanier was not a party to this suit but allegedly helped fund it because Miraglia promised to share the warrants, if obtained, with Vanier and other former shareholders of Miraglia, Inc.  Miraglia and Vanier began posting allegedly false and defamatory comments about FCFS on a Yahoo! finance message board from spring to early July 2003.  Randy York, a disgruntled former FCFS employee residing in Gregg County, Texas, also began posting similar comments.  Miraglia, Vanier, and York all used pseudonyms rather than posting under their names.

FCFS filed suit in Tarrant County to determine the identities of these posters and cause a subpoena to be issued by a California court to non-party Yahoo!.  When Yahoo! notified York that it would identify him, he contacted Goldowitz, a California attorney doing business as the California Anti-SLAPP Project, to help him quash the subpoena.  California Code of Civil Procedure Section 425.16 protects against “
S
trategic 
L
awsuits 
A
gainst 
P
ublic 
P
articipation” (SLAPPs).
(footnote: 1)  The California legislature enacted the anti-SLAPP statute to prevent and deter lawsuits (SLAPPs) “brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.”
(footnote: 2)  Because the legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP target, section 425.16 establishes a procedure whereby the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.
(footnote: 3)  Thus, under California law, alleged digital defamers may receive protection by this anti-SLAPP statute.  As admitted by Barron, this California legislation is much more lenient on alleged defamers, and Texas has not adopted similar protections. 

Goldowitz agreed to represent York in the proceeding on the motion to quash. 
 Goldowitz collaborated with York on a posting to the message board dated September 8, 2003.  This posting referred to and allegedly reaffirmed York’s prior statements about FCFS and its management, and it directed readers to contact the Anti-SLAPP project if they too were faced with potential disclosure of their identities.  As a result, Vanier contacted Goldowitz to represent him to prevent disclosure of his identity by Yahoo!, but Goldowitz refused to represent him.

In the proceeding on York’s motion to quash, the California court held that Barron could obtain York’s identity.  Before Barron actually received relevant records from Yahoo!, Vanier filed his own motion for protection. Following another set of hearings on this motion, Barron prevailed against Vanier as well.  A deposition of York further confirmed the identities of both Vanier and York.

On August 26, 2003, Barron filed a defamation suit against Miraglia in Parker County, Texas.  On April 20, 2004, Barron filed his first amended original petition in Parker County, Texas, adding defamation claims against Vanier, York, Goldowitz, and Anti-SLAPP.  Barron claimed that they had impeached his honesty and hurt the company’s reputation through allegations of, among other things, insider trading and illegal self-dealing.

On May 17, 2004, Vanier and Miraglia filed a notice of removal, in which Goldowitz joined, attempting to remove the case to federal court.  However, on August 30, 2004, the federal court signed a judgment remanding the case to the trial court, rejecting the movants’ theory that York, the Texas resident, was fraudulently joined.  The trial court did not regain jurisdiction over the case until October 2004, when a certified copy of the order of remand was filed there.  Goldowitz, Vanier, and Miraglia filed special appearances in that month.  Vanier subsequently filed an amended special appearance on December 1, 2004. The hearing on the special appearances was originally set for November 9, 2004.  On November 4, 2004, Barron filed a motion for continuance.  Due to scheduling conflicts of Barron’s attorneys, the parties filed an agreement on November 17, 2004, resetting the special appearance hearing to December 21, 2004.

On November 10, 2004, Barron served Vanier and Goldowitz with requests for production and requests for disclosure.  On November 15, 2004, Barron served them with notices of deposition.  Goldowitz and Vanier both filed motions to quash the notice of deposition.  Also on November 29, 2004, Vanier served his objections and responses to the requests for production.  On December 1, 2004, Vanier agreed that he would produce responsive documents in his possession by December 8, 2004, if Barron agreed to keep confidential his finances and other personal information.  In addition, Vanier’s attorney made several offers to present Vanier for deposition in California.  Barron filed responses to the special appearances on December 14, 2004.  On December 16, 2004, Barron twice amended his motion for continuance.  In the motion, Barron sought to conduct discovery regarding jurisdiction so that he could respond to Goldowitz’s, Vanier’s, and Miraglia’s special appearances.  He stated that he believed that he would be able to discover information regarding their contacts with Texas, their business dealings in Texas, and torts they committed against Texas residents.  Specifically, he sought, among other things, information regarding Goldowitz’s “engagement” on behalf of York, Vanier’s and Goldowitz’s communications with York and other Texas residents, their advertising in Texas, their travel to and property in Texas, and information about their Texas clients.  He also requested a privilege log, to which Vanier and Goldowitz objected.

The trial court heard the special appearances and the amended motion for continuance on December 21, 2004.  On January 3, 2005, the trial court wrote a letter stating, in part, that the special appearances of Vanier and Goldowitz were sustained.  On January 10, 2005, the trial court signed orders denying Barron’s motion for continuance and granting Vanier’s and Goldowitz’s special appearance.  The court denied Milagria’s special appearance, which Milagria does not challenge.  Barron filed a notice of this interlocutory appeal on January 31, 2005.

On appeal, Barron asserts that the trial court erred 1) by granting Vanier’s special appearance, 2) by granting Goldowitz’s special appearance, and 3) by denying his request for a continuance to permit him further discovery or to make any other order to allow him to garner his evidence establishing personal jurisdiction.  Vanier and Goldowitz respond separately to these issues and also argue that Barron’s failure to file a notice of appeal within twenty days after the trial court sustained their special appearances resulted in this court’s lack of jurisdiction over the appeal.

II.  Legal Analysis

A.  This Court’s Jurisdiction

We must first decide if we have jurisdiction to hear this appeal.  Vanier and Goldowitz argue that Barron failed to timely file a notice of appeal.  A trial court’s order granting a special appearance is an interlocutory, appealable order.
(footnote: 4)  Such appeals are accelerated.
(footnote: 5)  A notice of appeal in an accelerated appeal case must be filed within twenty days after the judgment or order is signed.
(footnote: 6)  Here, the trial court judge wrote a letter on January 3, 2005, stating in part that “[t]he special appearances of [Vanier and Goldowitz] are sustained.”  The letter recited the parties’ names and the cause number and contained the judge’s and court’s headings.  On January 10, 2005, the trial court judge signed separate orders sustaining the special appearances of Vanier and Goldowitz.  Barron filed his notice of appeal on January 31, 2005. 

Vanier and Goldowitz concede that Barron filed his notice of appeal within twenty days of the trial court judge’s signing the January 10, 2005 orders.  However, they argue that the letter itself may have constituted the trial judge’s order on their special appearances and that Barron did not file his notice of appeal within twenty days of this letter.

In the Texas Supreme Court’s 
Goff v. Tuchscherer
, a letter from the judge to counsel indicated that a plea of privilege had been overruled.
(footnote: 7)  Approximately three weeks later, the judge signed a final order overruling the plea.
(footnote: 8)  The court stated that “[l]etters to counsel are not the kind of documents that constitute a judgment, decision[,] or order from which an appeal may be taken” and held that “[t]he time from which one counts days for the appellate steps is that day on which the judge reduces to writing the judgment, decision or order that is the official, formal and authentic adjudication of the court upon the respective rights and claims of the parties.”
(footnote: 9)  In 
Schaeffer Homes, Inc. v. Esterak
, the El Paso court cited and distinguished the facts of its case from the facts of the 
Goff 
case.
(footnote: 10)  There
, 
the judge wrote a letter ruling on a motion for new trial.
(footnote: 11)  The court emphasized the precise language of the judge’s letter, stating that “the letter did not express an intent yet to be effectuated, e.g. ‘I am going to grant a new trial.’  The letter state[d] a ‘new trial is granted.’”
(footnote: 12)  The letter was signed, dated, and filed, and the court noted that there was no draft, directive, or subsequent order evidencing that the letter was not considered by the judge to have operative effect.
(footnote: 13)  Distinguishing 
Goff, 
the 
Schaeffer Homes
 court stated:

[In 
Goff
], a November 5, 1980 letter from the judge to counsel indicated that a plea of privilege had been overruled.  The letter was not filed, and on November 26, 1980, a final order overruling the plea was signed and filed.  The non-filing of the letter and the later entry of a formal order reflects that the trial judge did not intend the earlier letter to serve as an entered order.

The letter in the present case recites that the new trial is granted.  The letter was filed with the district clerk the next day.  There is no draft, directive or subsequent order evidencing that the April 25 letter was not considered by the judge to be the operative order itself.  In content, the letter substantially complies with all the requisites of formal entry of the decision rendered.  It is dated.  It is signed.  It identifies the parties and the trial court cause number . . . . Evidencing a decision actually rendered, describing such decision with certainty as to parties and effect, and publicly announcing entry of such decision by prompt filing, we consider this April 25, 1990 letter to possess all the necessary attributes of an order.
(footnote: 14)
 In our case, the judge’s letter uses present language and does not state an intent to be effectuated in the future.  In addition, it is signed, dated, and states the cause number and parties’ names.  However, the letter does not appear to have been filed in the clerk’s record.  Although it was included in the appellate record, it was not file stamped, and the parties admitted in oral argument that it was not filed.  In addition, a formal order was later entered and filed.  We hold that the letter did not constitute the order by which to begin measuring the twenty days.  Rather, the formal order signed on January 10, 2005, is the order from which Barron had twenty days to file his notice of appeal.  He filed his notice of appeal within twenty days of this date, and therefore this court has jurisdiction to hear the appeal.

B.  Barron’s Motion for Continuance

In his third issue, Barron argues in part that the trial court erred by denying his request for a continuance to permit him further discovery or to make any other order as is just to allow him to garner his evidence establishing personal jurisdiction.  We agree.

1.
  
Standard of Review

Texas Rule of Civil Procedure 120a(3) permits a trial court to order continuance of a special appearance hearing to permit further discovery “[s]hould it appear from the affidavits of the party opposing the motion that he cannot for reasons stated present by affidavit essential facts to justify his opposition.”
(footnote: 15)  The trial court’s denial of a continuance will not be disturbed absent a clear abuse of discretion, and “[t]he record should clearly show that the trial court has disregarded a party’s rights before reversing the trial court’s ruling.”
(footnote: 16)  We are to consider whether the trial court abused its discretion on a case-by-case basis.
(footnote: 17)  The Texas Supreme Court has considered the following nonexclusive factors when deciding whether a trial court abused its discretion by denying a motion for continuance seeking additional time to conduct discovery:  the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought.
(footnote: 18)
2. Analysis

On April 20, 2004, Barron filed his first amended original petition in Parker County, Texas.  On May 17, 2004, Vanier and Miraglia filed a notice of removal, in which Goldowitz joined, attempting to remove the case to federal court.  The trial court’s jurisdiction appears not to have revested following the remand from federal district court until October 13, 2004, because although the federal district court granted Barron’s motion to remand the case on August 30, 2004, this order was not filed with the Parker County court until October 13, 2004.  Goldowitz and Vanier filed their special appearances on October 19 and  22, 2004, respectively.  On October 28, 2004, Vanier set his special appearance for hearing on November 9, 2004, and on November 1, 2004, Goldowitz did the same.

a.  Length of Time
 
and Materiality

As Barron alleges in his second amended motion for continuance, less than two weeks passed between the time the federal court’s order was filed with the trial court and the date that Goldowitz filed his special appearance, and the hearing on the motion was set approximately two weeks later.  He therefore claims that he had inadequate time to conduct discovery regarding jurisdiction.  However, the parties agreed to reset the special appearance hearing to December 21, 2004, almost two months after Goldowitz and Vanier filed their special appearances.  In 
Joe v. Two Thirty Nine Joint Venture
, the Texas Supreme Court rejected the argument of Two Thirty Nine Joint Venture  (239 JV) that because the case had been on file for less than two months, it had been deprived of an adequate opportunity to conduct discovery to respond to its opponent’s motion for summary judgment.
(footnote: 19)  However, that case was not a special appearance case.  In addition, considering the chain of events and all of the circumstances here, discussed below, we believe that limiting the amount of time that Barron had to conduct jurisdictional discovery to two months was an abuse of discretion.

In 
Joe, 
the court stated that none of the further discovery that 239 JV desired, even if obtained, would have raised a fact issue as to the contested element of the cause of action (official immunity).
(footnote: 20)  The Fifth Circuit used a similar approach in 
Wyatt v. Kaplan, 
which was a personal jurisdiction case.
(footnote: 21)  Wyatt contended that the district court committed reversible error by dismissing his suit without permitting discovery, arguing that discovery might have produced the necessary prima facie evidence of personal jurisdiction.
(footnote: 22)  He argued that it was “unfair and illogical” to require that he “shoulder the burden of coming forward with evidence of jurisdiction while denying him the opportunity to develop that evidence.”
(footnote: 23)  The court stated that “[a]lthough Wyatt’s arguments are persuasive as general propositions, they do not require reversal 
in this case
, because the discovery Wyatt requested would not have produced evidence supporting his case on jurisdiction.”
(footnote: 24)  The court reasoned that because the additional contacts with Texas on which Wyatt requested discovery clearly did not give rise to the cause of action, they would be irrelevant to his attempt to establish personal jurisdiction.
(footnote: 25)  The court stated that it “affirm[ed] denials of discovery on questions of personal jurisdiction in cases where the discovery sought ‘could not have added any significant facts.’”
(footnote: 26)
 A Texas federal court also applied this principle to deny discovery in a personal jurisdiction internet defamation case, 
Revell v. Lidov
.
(footnote: 27)  In that case, alleged jurisdiction in Texas was based on the posting of an article by a Massachusetts resident on a website maintained in New York City, accessible in the state of Texas, and the plaintiff argued that the “depth and reach of the Defendant’s actions [had] yet to be fully exposed.”
(footnote: 28)  The court rejected this argument and denied the request for additional discovery because the plaintiff

[had] not presented [it] with any indication that such exposure could possibly reveal any evidence that would be relevant to jurisdiction.  All relevant information about the nature of [the] website and the posting of [the defendant’s] article [was] accessible to the Plaintiff by simply visiting the website.  Moreover, because the Plaintiff only allege[d] specific jurisdiction, information about other, unrelated contacts between the Defendants and the state of Texas is irrelevant.
(footnote: 29)

The 
Revell 
court did not appear to consider how much time the plaintiff already had for discovery in its analysis.

In our case, in Barron’s second amended motion for continuance, he provided a list of information that he desired to discover:

Information regarding [Vanier and Goldowitz’s] business dealings with Texas;

Information about Mr. Goldowitz’s engagement on behalf of Randall York;

Information about [Vanier and Goldowitz’s] communications with Mr. York and/or other Texas residents;

Information about [Vanier and Goldowitz’s] advertising in Texas;

Information about [Vanier and Goldowitz’s] Texas clients;

Information about [Vanier and Goldowitz’s] mail, electronic and telephone communications to Texas or with Texas residents;

Information about [Vanier and Goldowitz’s] travels to Texas;

Information about [Vanier and Goldowitz’s] posting on Yahoo that mentions Texas;

Information from Mr. Goldowitz regarding where he received the purported factual basis for his Yahoo post about a Texas corporation;

Information from Mr. Goldowitz regarding [a portion] of his affidavit;

Information from [Vanier and Goldowitz] regarding other general contacts with Texas;

Information from [Vanier and Goldowitz] regarding other specific contacts and/or internet posts the[y] each have made.

At the hearing, Barron presented other items he wanted to discover more information about, including information regarding Vanier’s relationship and contacts with Miraglia and information regarding whether Vanier and Miraglia had helped fund York’s lawsuit.

Thus, 
Joe 
and 
Revell 
are distinguishable.  Barron, like the 
Revell
 plaintiff, only alleges that Vanier and Goldowitz have specific jurisdiction contacts with Texas.  We do not analyze at this stage whether Barron’s cause of action “arises from or relates to” each of the specific items for which he requests additional discovery (as would be required after further discovery).  However, we believe that at least some of the categories of information for which Barron requests discovery relate to specific jurisdiction, such as his request for “[i]nformation about [Vanier and Goldowitz’s] posting on Yahoo that mentions Texas” and for “[i]nformation from Mr. Goldowitz regarding where he received the purported factual basis for his Yahoo post about a Texas corporation.”  Therefore, at least some of Barron’s requested information is possibly material to establishing personal jurisdiction.  Also, unlike the information requested in 
Joe, 
if the requested information exists, it would affect the issues at hand—whether personal jurisdiction is proper over Vanier and Goldowitz. Other jurisdictions have also addressed the issue of whether additional discovery should be allowed with regard to personal jurisdiction.  In 
El-Fadl v. Central Bank of Jordan, 
the District of Columbia’s Court of Appeals held that a “plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum.”
(footnote: 30)  Similarly, the Ninth Circuit Court of Appeals held that the district court abused its discretion by denying jurisdictional discovery in a tort action since further discovery might demonstrate facts sufficient to constitute a basis for jurisdiction.
(footnote: 31)  In addition, other federal courts allow further discovery on the issue of personal jurisdiction if the movant makes a good-faith showing, provides a colorable basis for, or makes a prima facie case of personal jurisdiction, or provides a reason to believe that discovery would reveal sufficient minimum contacts.
(footnote: 32)  We agree with this reasoning and that applied by the Fifth Circuit and Texas federal courts, and we believe that Barron has alleged sufficient information which, if existing and discovered, could support his allegations of personal jurisdiction over Vanier and Goldowitz, especially in light of Vanier’s and Goldowitz’s apparent strategic avoidance of Barron’s attempted discovery, discussed below.

b.  Due Diligence

Barron alleges that Vanier and Goldowitz “set up a myriad of road blocks which they now say were all reasonable and necessary” and “[t]he fact that [he] could not hurdle all [of] the road blocks and obtain a ruling on [them] prior  to the hearing does not suggest [that] he was not diligent.”  We agree.

On November 10, 2004, Barron served Vanier and Goldowitz with requests for disclosure and requests for production, and he served them with notices of deposition on November 15, 2004.  Barron alleged that even though he was diligent in attempting to obtain discovery, Goldowitz and Vanier failed to respond substantively to the requests, asserted privileges and objections to many of them, and quashed the deposition notices.  Barron claims that, as a result, he was not given the opportunity to obtain written discovery or depose or cross-examine them regarding statements in their affidavits.

Vanier made broad objections and claims of privilege to Barron’s requests for production, and stated that he would produce unobjectionable documents only if Barron signed a confidentiality agreement.  Goldowitz likewise made broad objections, but offered to produce certain documents without limitation.

As for the claim of privilege
 
in both Vanier’s and Goldowitz’s responses
, 
because Barron did not formally request a privilege log until December 15 or 16, 2004, the privilege log was not due back to him before the hearing on the motion.
(footnote: 33)  Vanier claimed that he would have produced the privilege log at the hearing if he had been given more time, but that because the privilege log was not due until after the hearing and he only had four days to respond to the request, he was unable to produce the log in time for the hearing.  Regardless of the reasoning, Barron was still unable, by the time of the hearing, to assess the applicability of the privileges asserted—the very purpose of a privilege log.
(footnote: 34)
 The Texas Supreme Court has indicated that failure to file a motion to compel discovery or otherwise attempt to obtain the items objected to may indicate a lack of diligence.
(footnote: 35)  Barron never filed a motion to compel discovery against Vanier or Goldowitz.  However,  the limited discovery responses were not given to him until late November and early December.  Considering the very short time period that he had to file the motion to compel and the restricted access he had to information due to Vanier’s and Goldowitz’s limited responses, this factor alone is insufficient to show a lack of diligence.

In light of the above, we hold that the trial court abused its discretion in denying Barron’s motion for continuance as to Goldowitz and Vanier.  Although Barron appears to also argue that his motion for continuance should be granted with regard to Miraglia, he did not join Miraglia in his appeal and we do not decide this issue.

c.  Barron’s Affidavits

Pursuant to Rule 120a(3), Barron attached affidavits from three attorneys who represented him to his motion for continuance.  The affidavits regarding Goldowitz and Vanier are virtually identical and state, in relevant part:

Since this matter was remanded to the present Court, [Goldowitz/Vanier] has filed a special appearance. [Barron] has not secured all the facts essential to justify his opposition pursuant to TRCP 120a(3).  [Barron] has diligently been responding to numerous motions by [Goldowitz/Vanier] in the federal action and due to the recent remand has been unable to secure discovery from [Goldowitz/Vanier].  [Barron] therefore requests that this Court grant a continuance . . .

Specifically, [Barron] needs to obtain discovery from [Goldowitz/Vanier] regarding his contacts with the State of Texas, his business dealings in Texas and his direction of torts at Texas residents. [Barron] believes [he] would be able to obtain this information with discovery.  This information is material to the special appearance as it shall provide proof that [Goldowitz/Vanier] has . . . availed himself to the jurisdiction of this Court.

Goldowitz argues that the affidavits are “conclusory and were essentially worthless for demonstrating diligence and necessity to the trial court.”  He cites 
Rocha v. Faltys
 for the proposition that “[t]he affidavit of diligence must state with particularity what diligence was used; conclusory allegations of diligence are not sufficient.”
(footnote: 36)  Goldowitz also argues that because the affidavits were executed on November 3, 2004, they did not address his failure to take advantage of the additional time afforded by the postponing of the hearing.  Vanier alleges that Barron’s affidavits are insufficient because they did not provide “reasons” why he could not obtain an affidavit with essential facts to justify his opposition in accordance with 120a(3), but merely stated that “he has not secured” the facts.  Vanier also argues that because the affidavits state that Barron had not 
secured 
such facts, it constituted a judicial admission that he did not 
have 
the facts and thus could not defeat Vanier’s special appearance.

Barron responds that 
Rocha 
is inapplicable because that court did not refuse to allow discovery based on the affidavit; rather, it held that the 
motion
 failed to state why the evidence was needed and failed to show diligence.
(footnote: 37)  We agree.  Although the 
Rocha 
court discussed the particularity with which an affidavit must state what diligence was used, it 
 specifically noted that “the 
motion
 stated that the continuance was sought ‘to explore this evidence and depose other witnesses’” and “[t]he 
motion
 failed to identify the specific evidence that would have been sought had the continuance been granted.  Nor does the 
motion 
establish or discuss the materiality of the new evidence to the Rochas’ claims.  This lack of specificity does not comply with the requirements of Rule 252.”
(footnote: 38)  The 
Rocha 
court continues that an attorney’s affidavit “contained only conclusory statements that the . . . attorneys had been diligent and that efforts had been made to find [the deponent] earlier in the discovery process.  The affidavit did not describe the particular efforts that were made.”
(footnote: 39)  However, unlike Rule 120a(3), Rule 252, not applicable to our case, specifically provides that the affidavit must show that one “has used due diligence to procure such testimony, 
stating such diligence
.”
(footnote: 40)  Therefore, these latter statements in 
Rocha
’s holding do not apply to our case.  We believe that the reasons stated in the affidavits cause “it [to] appear . . . that Barron cannot . . . present by affidavit” the facts he needed to justify his opposition to the special appearance, and we reject Vanier’s argument that they do not comply with Rule 120a.  In addition, we believe that Barron does provide in his affidavit at least one of the reasons why he had been unable to secure facts essential to justify his opposition: because the case was only recently remanded.  Moreover, although the affidavits were executed on November 1, 3, and 5, 2004—long before the December 21, 2004 hearing—the reasons provided in the affidavits did not change thereafter:  the case was still recently remanded and Barron was still unable to obtain discovery.

In response to the judicial admission allegation, Barron points out that, if any time a plaintiff sought a continuance to conduct discovery on jurisdiction as permitted under Rule 120a(3) it could face a claim that, by virtue of the request being filed, the plaintiff had made a judicial admission that jurisdiction did 
not 
exist in Texas, then this possibility would defeat the purpose of permitting discovery.  We agree.  If a plaintiff had what it considered to be a sufficient but shaky basis for jurisdiction over a defendant, but knew the basis would be strengthened by future discovery, it would be discouraged from filing a motion for further discovery if by doing so, it was deemed to admit that its case as is would fail for lack of personal jurisdiction.

For the above reasons, we hold that Barron’s affidavits are sufficient to support his motion for continuance.

III.  Conclusion

Because we have held that the trial court abused its discretion by denying Barron’s motion for continuance to conduct discovery on personal jurisdiction, its ruling on Vanier’s and Goldowitz’s special appearances was premature.  We do not reach Barron’s remaining issues.
(footnote: 41)  We reverse the trial court’s order denying the motion for continuance and remand this case for additional discovery and for further proceedings.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  March 30, 2006

FOOTNOTES
1:
See 
C
al. Civ. P. Code § 425.16 (W
est 2004 & Supp. 2005).

2:
Id.

3:
Varian Med. Sys.
,
 Inc. v. Delfino
,
 
106 P.3d 958, 966 (Cal. 2005) (
citing Simmons v. Allstate Ins. Co.
, 112 Cal. Rptr. 2d 397, 400-01 (Cal. Ct. App. 2001)).

4:
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(
a)(7) (Vernon Supp. 2005).

5:
S
ee
 
Tex. R. App. P. 28.1.

6:
Tex. R. App. P. 
26.1(b
).

7:
Goff v. Tuchscherer
, 627 S.W.2d 397, 398 (Tex. 1982)
.

8:
Id.

9:
Id. 
at 398-99.

10:
Schaeffer Homes
,
 Inc.
,
 v. Esterak
,
 
792 S.W.2d 567, 568-69 (Tex. App.—El Paso 1990, no writ).

11:
Id. 
at 568.

12:
Id.

13:
Id.
 at 568-69.

14:
Id. 
at 569.

15:
Tex. R. Civ. P. 120
a(3).

16:
Royal Mortgage Corp. v. Montague
, 41 S.W.3d 721, 738 (Tex. App.—Fort Worth 2001, no pet.), 
disapproved of on other grounds, Michiana Easy Livin’ Country, Inc. v. Holten
, 168 S.W.3d 777, 778-89 (Tex. 2005); 
see also BMC Software Belg.
,
 N.V. v. Marchand
,
 
83 S.W.3d 789, 800 (Tex. 2002).

17:
BMC Software
, 83 S.W.3d at 800.

18:
Joe v. Two Thirty Nine Joint Venture
,
 
145 S.W.3d 150, 161 (Tex. 2004).

19:
Id.
 at 160.

20:
Id. 
at 161-62.

21:
Wyatt v. Kaplan
, 686 F.2d 276, 283 (5th Cir. 1982).

22:
Id.

23:
Id.

24:
Id.
 (emphasis added).

25:
Id. 
at 284-85.

26:
Id.
 at 284 (quoting 
Washington v. Norton Mfg.
,
 Inc.
,
 
588 F.2d 441, 447 (5th Cir. 1979); 
cert. denied
, 442 U.S. 942 (1979)).

27:
Revell v. Lidov
, No. 3:00-CV-1268-R, 2001 WL 285253, at *8 (N.D. Tex. Mar. 20, 2001), 
aff’d
, 317 F. 3d 467 (5th
 Cir. 2002).

28:
Id.

29:
Id. 
(citation omitted).

30:
El-Fadl v. Cent. Bank of Jordan
, 75 F.3d 668, 676 (D.C. Cir. 1996).

31:
Harris Rutsky & Co. Ins. Servs.
,
 Inc. v. Bell & Clements Ltd.
, 328 F.3d 1122, 1135 (9th Cir. 2003); 
see also In re Magnetic Audiotape Antitrust Litig.
, 334 F.3d 204, 207-08 (2nd Cir.
 2003).

32:
See
,
 e.g.
,
 Formica v. Cascade Candle Co.
, 125 F. Supp. 2d 552, 556 (D.D.C. 2001) (quoting 
Caribbean Broad. Sys.
,
 Ltd. v. Cable & Wireless P.L.C.
, 148 F.3d 1080, 1090 (D.C. Cir. 1998))
; Smith v. S & S Dundalk Eng’g Works
,
 Ltd.
,
 
139 F. Supp. 2d 610, 623 (D.N.J. 2001)
; 
Booth v. Verity
,
 Inc.
, 124 F. Supp. 2d 452, 457-58 (D. Ky. 2000) (citing 
Chrysler Corp. v. Fedders Corp
. 643 F.2d 1229, 1240 (6th Cir. 1981), 
cert. denied
, 454 U.S. 893 (1981); 
Granville Gold Trust-Switzerland v. Commissione Del Fallimento/Interchange Bank
,
 
928 F. Supp. 241, 244 (E.D.N.Y. 1996), 
aff’d 
111 F.3d 123 (2nd Cir. 1997)
 (citing 
N.Y. Marine Managers
,
 Inc. v. Topor-1
, 1989 WL 4030, *1 (S.D.N.Y. Jan. 17, 1989); 
Asarco, Inc. v. Glenara
,
 Ltd.
, 912 F.2d 784, 785 (5th Cir. 1990)); 
Arch v. Am. Tobacco Co.
, 984 F. Supp. 830, 834 (E.D. Pa. 1997) (citing 
Mellon Bank (East) PSFS v. Farino
, 960 F.2d 1217, 1223 (3d Cir. 1992); 
Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n
, 819 F.2d 434, 437 (3d Cir. 1987)); 
Ellis v. Fortune Seas
,
 Ltd.
,
 
175 F.R.D. 308, 312 (D. Ind. 1997).

33:
See 
Tex. R. Civ. P. 193.3(
b
).

34:
See id.

35:
BMC Software
, 83 S.W.3d at 800-01.

36:
Rocha v. Faltys
,
 
69 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.) (citing 
Gregg v. Cecil
, 844 S.W.2d 851, 853 (Tex. App.—Beaumont 1992, no writ)).

37:
Id.

38:
Id.  
Tex. R. Civ. P
. 252 provides for the application for continuance for want of testimony.

39:
Rocha
,
 
69 S.W.3d
 
at 319.

40:
Tex. R. Civ. P
. 252 (emphasis added).

41:
See 
Tex. R. App. P. 47.4.