

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00447-CV

Cynthia Hargrave **VIATOR**, Personal Representative of the Estate of Harvey Hargrave,
Deceased; John Lawrence Hargrave, Individually; Patrick Joseph Hargrave; and
Cynthia Hargrave Viator, Individually,
Appellants

v.

**HTC HOLDING a.s.**, Fragokov - Export, Manufacturing Cooperative, and Zetor a.s.,
Appellees

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2011-02-27947-CV
Honorable Camile G. Dubose, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Phylis J. Speedlin, Justice
                  Rebecca Simmons, Justice
                  Marialyn Barnard, Justice

Delivered and Filed:   November 28, 2012

AFFIRMED

Cynthia Hargrave Viator, Personal Representative of the Estate of Harvey Hargrave,

Deceased; John Lawrence Hargrave, Individually; Patrick Joseph Hargrave; and Cynthia

Hargrave Viator, Individually (collectively, "Viator") appeal the trial court's granting of the

special appearances filed by Fragokov and Zetor a.s. Because we conclude that the entities are

not subject to personal jurisdiction in Texas, we affirm the judgment of the trial court.

**BACKGROUND**

On February 2, 2009, Harvey Hargrave suffered fatal injuries when the brakes and/or clutch on the tractor he was using to push an old fence into a fire pit allegedly failed, causing him to fall into the fire pit. Hargrave was severely burned, and died 39 days later as a result of the accident. Hargrave purchased the 1998 John Deere 2400 tractor at an auction in Mississippi and transported the tractor to his ranch in Uvalde County. Viator alleged that the John Deere tractor was manufactured by Zetor a.s., a Czech company, and equipped with hydraulic components manufactured by Fragokov, a Slovakian company. Viator sued Alton LeBlanc & Sons, LLC, Deere & Company, Zetor North America, Inc., HTC Holding a.s., Zetor a.s., and Fragokov asserting causes of action for products liability, negligence, wrongful death, and breach of the implied warranty of fitness. HTC Holding a.s., Zetor a.s. ("Zetor"), and Fragokov - Export, Manufacturing Cooperative ("Fragokov") each filed a special appearance challenging personal jurisdiction, arguing, in part, that they lack minimum contacts with Texas and that the trial court's assertion of jurisdiction offended traditional notions of fair play and substantial justice. Following a hearing, the trial court sustained the special appearances filed by HTC Holding a.s., Zetor, and Fragokov. Viator timely appealed. Viator subsequently filed a motion to dismiss the appeal as to HTC Holding a.s. That motion is granted. *See* TEX. R. APP. P. 42.1(a)(2).

**DISCUSSION**

On appeal, Viator argues that the trial court erred in granting the special appearances in favor of Fragokov and Zetor because they are both subject to personal jurisdiction in Texas.

### Burden of Proof and Standard of Review

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *Kelly v. Gen. Interior*

*Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Once the plaintiff has pleaded sufficient jurisdictional allegations, the nonresident defendant filing a special appearance then assumes the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658; *Coleman*, 83 S.W.3d at 807. If the defendant produces evidence negating jurisdiction, the burden returns to the plaintiff to show as a matter of law that the court has jurisdiction over the defendant. *Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C*., 167 S.W.3d 432, 441 (Tex. App.—San Antonio 2005, no pet.); *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 273 (Tex. App.—San Antonio 2002, pet. dism'd). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly*, 301 S.W.3d at 658.

Whether a court has personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *Zinc Nacional, S.A. v. Bouche Trucking, Inc*., 308 S.W.3d 395, 397 (Tex. 2010); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact or conclusions of law to support its special-appearance determination, we presume that all factual disputes were resolved in favor of the trial court's ruling. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871-72 (Tex. 2010); *Marchand*, 83 S.W.3d at 794; *Griffith v. Griffith*, 341 S.W.3d 43, 49 (Tex. App.—San Antonio 2011, no pet.).

### *Applicable Law — Personal Jurisdiction*

The Texas long-arm statute's broad "doing business" language authorizes personal jurisdiction over a nonresident defendant "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815

S.W.2d 223, 226 (Tex. 1991); TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008). To establish personal jurisdiction, the defendant must have established minimum contacts with the forum state, and the assertion of jurisdiction must comport with "traditional notions of fair play and substantial justice." *Marchand*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts analysis requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction." *Marchand*, 83 S.W.3d at 795. When specific jurisdiction is asserted, the minimum contacts analysis focuses "on the 'relationship among the defendant, the forum, and the litigation.'" *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007) (quoting *Guardian Royal*, 815 S.W.2d at 228).

Both the Texas Supreme Court and the United States Supreme Court have held that the mere fact that goods have traveled into a state, without more, does not establish the minimum contacts necessary to subject a manufacturer to personal jurisdiction within that state. *See, e.g., Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980); *Michiana*, 168 S.W.3d at 788. The mere fact that a seller knows its goods will end up in the forum state does not support jurisdiction when the seller made no attempt to market its goods there. *Michiana*, 168 S.W.3d at 787. "The exercise of jurisdiction over a merchant requires that the merchant actually direct sales *to* the forum state, not *through* it." *Zinc Nacional*, 308 S.W.3d at 397-98 (citing *Asahi*, 480 U.S. at 112 ("The

placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State. . . .")).

*Analysis*

On appeal, Viator contends that Fragokov and Zetor failed to negate all the bases of personal jurisdiction alleged by the plaintiffs. Specifically, Viator argues that both defendants failed to address whether they are aware that "thousands of [their] products were ultimately being sold in the forum state." Viator further argues that the trial court should not have dismissed Fragokov and Zetor prior to document production in accordance with Rule 120a(3). *See* TEX. R. CIV. P. 120a(3).

First, we address whether the trial court prematurely granted the special appearances. The trial court determines a special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony. *Id.*; *Gutierrez*, 100 S.W.3d at 273. The scope of discovery is generally within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). We thus review an issue of "adequate time for discovery" under an abuse of discretion standard. *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 855 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701

S.W.2d 238, 241-42 (Tex. 1985)). In reviewing the trial court's decision, we must determine whether the trial court's action was arbitrary or unreasonable. *Downer*, 701 S.W.2d at 242.

In this case, Viator filed suit on February 1, 2011. Fragokov filed its special appearance on May 3, 2011 and Zetor filed its special appearance on November 4, 2011. Thereafter, the trial court entered a docket control order providing specific dates by which the discovery relating to the special appearance issues was to be completed, setting that deadline for February 1, 2012. Viator first served requests for production on September 19, 2011. The trial court subsequently limited Viator's requests for production to 150 in number and allowed the defendants additional time to respond due to the necessity of translating the requests and responses. During that time, Viator did not seek depositions from any Zetor or Fragokov employee or representative.

The hearing on the special appearances was held on June 1, 2012. Immediately prior to the hearing, counsel for Viator filed responses to the special appearances as well as his own affidavit stating that Zetor and Fragokov have produced no documents in response to plaintiffs' requests for production, and that the responsive documents bear on the jurisdictional issues. During the hearing, Zetor objected to the untimely and conclusory affidavit filed by Viator's counsel. Zetor also argued that the reason it had not filed any documents related to jurisdiction in Texas was because Zetor did not possess such documents, and therefore counsel represented to the court that Zetor would not be supplementing the responses in the coming weeks. Zetor's Responses and Objections to Plaintiffs' Second (sic) Amended Requests for Production were admitted into evidence. The trial court stated that it would not rule on the special appearances until June 22, 2012 to give the parties time to file additional briefing. All parties filed post-hearing briefing.[1]

---

[1] The post-hearing letter brief filed by Viator is not part of the appellate record because it was not filed with the trial court clerk.

In *Barron v. Vanier*, the Fort Worth Court of Appeals held that the trial court abused its discretion in denying the plaintiff's motion for continuance of a special appearance hearing to permit him to conduct further discovery on the issue of personal jurisdiction where the special appearance hearing was held two months after the filing of the special appearances, and the plaintiff sought information which, if existing and discovered, could support his allegations of personal jurisdiction over the defendants. *Barron v. Vanier*, 190 S.W.3d 841, 847-51 (Tex. App.—Fort Worth 2006, no pet.). Here, in contrast, Viator had ample time in which to conduct discovery. In fact, the trial court delayed its ruling for an additional three weeks after the special appearance hearing to allow Viator to "direct the Court to any discovery requests that were responded to or not responded to that you feel are necessary in order to provide further proof with regard to the special appearances." In addition, counsel for Zetor represented to the court at the hearing that it would not be filing any documents relating to contacts with Texas because Zetor had no contacts with Texas and therefore possessed no such documents. Accordingly, Viator had sufficient time in which to conduct discovery on the jurisdictional issues, and additional time was unlikely to yield information supporting Viator's allegations of personal jurisdiction over the defendants. *See, e.g., Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (considering the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought in determining whether trial court abused its discretion by denying motion for continuance in summary judgment context). Thus, we conclude the trial court did not abuse its discretion in granting the special appearance under Rule 120a(3).

We next address Viator's argument that the trial court improperly granted the special appearances because both Fragokov and Zetor failed to negate all the bases of personal jurisdiction alleged by the plaintiffs.

A. **Fragokov**

Viator sued Fragokov, an entity headquartered in the Slovak Republic, and asserted that it is "doing business" in Texas. Viator averred that the Texas courts have jurisdiction over Fragokov because:

> it is an alien entity doing business in Texas and has purposefully availed itself of the privileges and benefits of conducting business in Texas by manufacturing tractors and other equipment for sale in Texas, distributing, marketing and selling John Deere brand tractors and other equipment in Texas.

In its special appearance, Fragokov argued that it is not a resident of the state of Texas and has had no purposeful contacts with Texas. Fragokov also maintained that it never conducted business in the United States and that it has no current contracts with any entity to deliver goods directly to the United States. Fragokov did admit manufacturing parts between 1996 and 1997 which were later used in a tractor assembled at an unknown location at the request of and to the specifications of Zetor, another foreign entity. In support, Fragokov attached to its special appearance the affidavit of Vladimir Kivader, a technical manager. Fragokov also attached a copy of its contract with Zetor and an English translation of the contract. Kivader averred, in part, that Fragokov:

- does not own any personal or real property in Texas, nor does it maintain bank accounts in Texas, or advertise in Texas;
- does not sell the tractor hydraulic brake and clutch cylinders in Texas; all design, manufacturing, and testing of cylinders have occurred only in Czechoslovakia or the Slovak Republic;
- does not own or operate any facilities in Texas;
- does not pay taxes in the United States or Texas;
- does not have agents, employees, sales representatives, or subsidiaries in Texas;

- does not solicit business in Texas;
- does not have a contract with any Texas citizen or resident regarding the hydraulic break in question; and
- does not have any control over the sale, distribution, or destination of the brake and clutch cylinders which John Deere installs.

On appeal, Viator asserts that Kivader's declaration fails to address whether Fragokov is aware that "thousands of products were ultimately being sold in the forum state," thus subjecting itself to stream of commerce jurisdiction. Given the pleadings filed by Viator, Fragokov's only burden was to discount the argument that it "did business" in Texas. We believe that Fragokov met that burden by filing Kivader's declaration, in which Kivader demonstrated that Fragokov has had no contacts with the state of Texas. Additionally, even if Fragokov were required to discount the stream of commerce argument now being made on appeal, a seller's awareness "'that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'" *Kimich*, 310 S.W.3d at 873 (quoting *CSR Ltd v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)); *Asahi*, 480 U.S. at 112. Here, Fragokov lacks the "additional conduct" indicating an intent or purpose to serve the Texas market required to impose personal jurisdiction. *See Kimich*, 310 S.W.3d at 873 (quoting *Asahi*, 480 U.S. at 112) (examples of additional conduct include: (1) "designing the product for the market in the forum State," (2) "advertising in the forum State," (3) "establishing channels for providing regular advice to customers in the forum State," and (4) "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State"). The record before us does not reveal the existence of conduct by Fragokov purposefully directed to Texas. There is no evidence that Fragokov sought a benefit, profit, or advantage by availing itself of the Texas market, or that Fragokov had sufficient minimum contacts with Texas to make it amenable to jurisdiction in

Texas. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2791 (2011) (defendant manufacturer cannot be subject to personal jurisdiction under stream of commerce theory where it did not engage in activities in forum state that reveal intent to invoke or benefit from protection of forum state's laws). Accordingly, we conclude the trial court did not err in granting the special appearance filed by Fragokov.

B. **Zetor**

Zetor is a foreign corporation formed under the laws of the Czech Republic with its principal place of business located in the Czech Republic. Viator asserted that Zetor manufactured the John Deere tractor at issue, and argued that it was amenable to jurisdiction in Texas:

> This Court has jurisdiction over Defendant ZETOR (CZECH REPUBLIC) because it is an alien entity doing business in Texas and has purposefully availed itself of the privileges and benefits of conducting business in Texas by manufacturing tractors and other equipment for sale in Texas, distributing, marketing and selling John Deere brand tractors and other equipment in Texas.

In response, Zetor filed a special appearance in which it stated that it has never been a resident of Texas; is not and has never been authorized to do business in Texas; is a corporation incorporated under the laws of the Czech Republic; has its principal place of business in the Czech Republic; has no offices or place of business in Texas; does not have and has never had a registered agent for service of process in Texas; and has had no contacts with Texas. Zetor also filed the declaration of Ivona Vavrova, Chairperson on the Supervisory Board of Zetor. Vavrova stated, in part, that Zetor:

- does not own any personal property or real estate in Texas;
- does not maintain bank accounts in Texas or perform advertising in Texas;
- did not sell the tractor in question in Texas or to Texas;
- does not own or operate any facilities in Texas and does not have any employees, agents, sales representatives or subsidiaries working within Texas;

- does not pay taxes in Texas;
- does not sell and has not sold products directly into the State of Texas; does not solicit business within Texas; has no contracts with any Texas citizen or resident regarding the design, manufacture, or sale of tractors;
- has no control over the sale, distribution, or destination of tractors in which Deere & Company installs brakes and/or clutch systems;
- does not manufacture any product in the United States, including Texas; and
- does not market the subject tractor or any other product in Texas.

On appeal, Viator argues that Vavrova's declaration "quite conspicuously sidesteps the question whether Zetor, a.s. is aware that 'thousands of its products were ultimately being sold in the forum state.'" Again, based on Viator's pleadings, Zetor was required to disprove that it purposefully availed itself of the Texas forum by: (1) manufacturing tractors and other equipment for sale in Texas; and (2) distributing, marketing, and selling John Deere brand tractors and other equipment in Texas. We disagree that Zetor failed to meet its burden. On this record, there is no evidence that Zetor either manufactured tractors for sale in Texas or distributed, marketed, or sold John Deere tractors in Texas. Vavrova's declaration demonstrates that Zetor has no contacts with Texas. Further, we cannot conclude that Zetor subjected itself to stream of commerce jurisdiction, as there is no evidence that Zetor purposefully availed itself of the Texas market. *See J. McIntyre*, 131 S.Ct. at 2791. On the record before us, there is simply no evidence that Zetor attempted to market its goods in Texas. *See Michiana*, 168 S.W.3d at 787. Accordingly, we hold that the trial court did not err in granting the special appearance in favor of Zetor.

CONCLUSION

Based on the foregoing, we overrule Viator's issue on appeal, and affirm the judgment of the trial court granting the special appearances filed by Fragokov and Zetor. Viator's motion to dismiss as to HTC Holding a.s. only is granted.


Phylis J. Speedlin, Justice